1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ANTHONY L. ZEIGLER,                    No.  2:18-CV-0578-TLN-DMC-P

12                Petitioner,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   ROBERT FOX,

15                Respondent.

16

17             Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition

19   for a writ of habeas corpus, ECF No. 1, and Respondent's answer, ECF No. 17.  Petitioner has not

20   filed a traverse.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

# I. BACKGROUND

A.    **Facts**[1]

The California Court of Appeal recited the following facts in its decision on direct appeal, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

### 2013 Stabbing

In May 2013, Joshua Hendon, Kevin Brazil, and Alexander Salas went to a bar in Chico. Hendon and defendant got into a 'scuffle,' and security officers at the bar ejected defendant from the bar. Defendant was wearing a red polo shirt and a gold cross necklace. One of the security officers, Jorge Martinez, testified he saw other security officers ejecting a man in a red shirt from the bar, and recognized the man as defendant, a regular patron at the bar. Another security officer, James Bender, testified he had ejected an African-American man wearing a red shirt. He later identified defendant as the man he ejected. Hendon and his friends left the bar at about 1:30 a.m. While they were waiting for a ride outside, defendant punched Hendon in the back. Hendon chased defendant to the end of the building when he heard defendant tell his friend, who was leaning on a vehicle, "Pop this nigga." Defendant's friend lifted his shirt and Hendon saw the handle of a gun, so he ran back toward the bar. Defendant got into a truck and left.

Police officer Michael Caldwell responded to a report of a stabbing at the bar. When he arrived, the security officers were applying pressure to a wound on Hendon's back. Caldwell observed a fresh wound one to two inches deep on Hendon's back. Bar employees gave Caldwell photographs of the persons who had gone into the bar that night that included defendant. Defendant was a regular customer, so they were familiar with him. The security officers identified defendant as the person they had earlier ejected from the bar for fighting. Caldwell also prepared a six-person photographic lineup that included defendant and Salas. The security officers identified defendant.

Dr. Levitt treated Hendon at the hospital for a one-half inch deep wound to his back. Hendon received eight staples to close the wound. Dr. Levitt opined a fist could have caused the wound, but that would be atypical. Dr. Thomas Resk, a forensic pathologist, reviewed the photographs of Hendon's wound and video of the confrontation and concluded the wound was a "straightforward stab wound with an element of blunt-force trauma."

---

[1]    Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence.  See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012).  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

1

<u>2014 Shooting Incident</u>

2

In January 2014, Carly Sims, John Lowe, Sean Lowe, Tina Acosta, and
Christina Acosta were standing on the sidewalk outside the front entrance

3
to Arabian Nights, a hookah bar in downtown Chico, when they heard a
gunshot coming from the direction of a nearby restaurant, Tres Hombres.

4
They did not see the shooter, but Sean immediately felt pain in his knee
and realized he had been shot. Sean was transported to the hospital. The

5
bullet wound caused part of Sean's knee to fracture and break. He
underwent emergency surgery and was hospitalized for three days.

6

Around the same time, Jonathan Chesney, a bouncer at a nearby sports

7
pub, saw "a scuffle" break out down the street toward his left, in the
direction of Tres Hombres restaurant. He also noticed a large group of

8
people were standing in front of the hookah bar to his right. The fight was
between a group of five or six Hispanic or Asians and two African-

9
Americans, one of whom was defendant. The fight involved people yelling
and throwing punches. During the fight, one of the group of five or six

10
grabbed defendant's jacket, resulting in the jacket being thrown on the
ground. Defendant started running away, toward Chesney, and had his

11
jacket torn off by the other man. He ran around the corner, and as he
passed in front of Chesney, defendant grabbed keys from his back pocket

12
and said, "I'll be back motherfuckers." A minute or two later, defendant
reappeared from the alleyway to the south of Tres Hombres, brandishing a

13
semiautomatic pistol. Chesney ducked back into the pub, closed the door,
and then heard a gunshot. Before he closed the door, Chesney saw the

14
group defendant had been fighting with walking back toward defendant.
After hearing the gunshot, Chesney saw a person sitting on the sidewalk

15
whom he understood had been shot. Chesney did not see anyone but
defendant with a gun or any other type of weapon.

16

Officer Peter Durfee responded to the report of gunshots. Durfee found an

17
expended nine-millimeter shell casing near an alley just south of Tres
Hombres, and a black leather jacket just north of Arabian Nights.

18
Detective Ben Love investigated the shooting. The description of the
suspect matched defendant, and Love found photographs on defendant's

19
social media accounts of him wearing a leather jacket similar to the one
found at the scene. Love examined the jacket and noticed a red wire had

20
been used to bind the cuff of the jacket; the social media photographs
showed a red wire holding the cuff together. The jacket was tested for

21
DNA, and found to have a mixture containing 'all of [defendant's] DNA
types for his DNA profile.'

22

Detective Love also recovered video surveillance footage from the

23
Arabian Night Hookah Lounge showing defendant running down the
street, bumping into someone, and pulling something from his jacket.

24
Defendant was wearing a red shirt. Love identified the person on the
videotape as defendant wearing the red shirt. Chesney identified the

25
person wearing the red shirt on the videotape, as the man he had seen
brandishing the gun. No witnesses observed the actual shooting or saw

26
anyone pointing a gun.

27     / / /

28     / / /

A criminalist determined the bullet found at the scene had been fired from an automatic or semiautomatic firearm, not a revolver.

ECF No. 19-10, pgs. 1-2.

B.    **Procedural History**

The state court recited the following procedural history through Petitioner's conviction and sentence:

> The trial court granted the People's motion to consolidate the charges stemming from the 2013 stabbing and the 2014 shooting. An amended information charged defendant with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)—count 1), assault with a semiautomatic firearm (§ 245, subd. (b)—in count 2), possession of a firearm by a felon with prior felony convictions (§ 29800, subd. (a)(1)—count 3), and unlawful firearm activity (§ 29805—count 4). The information further alleged as to count 1, defendant personally used a knife (§ 12022, subd. (b)(1)), and as to count 2, defendant personally used a firearm (§ 12022.5) and personally inflicted great bodily injury upon Sean Lowe, not an accomplice (§ 12022.7, subd. (a)). The information also alleged as to counts 2, 3, and 4 that defendant was released from custody on bail or his own recognizance in the stabbing case, case No. CM039082. (§ 12022.1.)
>
> Defendant moved *in limine* to bifurcate count 1, the 2013 stabbing, from the other charges. Defendant argued though the charges were properly joined, the court had discretion to try them separately, particularly where a weak case might unfairly bolster a stronger case. At the hearing, defense counsel also claimed the "alleged cross-admissibility is suspect." The People argued the cases were the same class of crime, assaultive, the evidence in each was strong, and defendant's conduct in each was similar. The trial court denied the motion to bifurcate.
>
> The jury found defendant guilty on all counts and found true the special allegations as to counts 1 and 2. Outside of the presence of the jury, defendant admitted incurring two prior felony convictions. In a bifurcated proceeding, the court found defendant in violation of probation in case No. SCR8554, and found the on-bail enhancement allegation true.
>
> The trial court denied probation and sentenced defendant to serve 25 years 8 months in prison as follows: the upper term of 9 years in prison on count 2, plus a consecutive 10 years for the firearm use and a consecutive 3 years for the infliction of great bodily injury; the upper term of 4 years, 3 years stayed, on count 1, consecutive, plus one year for the deadly weapon enhancement, stayed, the upper term of 3 years in prison on count 3, 2 years 4 months stayed consecutive to count 2, plus the 2-year on-bail enhancement; and the upper term of three years on count 4, stayed pursuant to section 654.

ECF No. 19-10, pgs. 2-3.

/ / /

4

1  Petitioner did not appeal the California Court of Appeal's decision on direct

2  review.  Petitioner filed a petition for a writ of habeas corpus directly with the California Supreme

3  Court on June 7, 2017.  See ECF No. 19-12.  The California Supreme Court denied the petition

4  without comment or citation on August 16, 2017.  See id.

5

6  **II.  STANDARDS OF REVIEW**

7  Because this action was filed after April 26, 1996, the provisions of the

8  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.

9  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128

10  F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not,

11  however, apply in all circumstances.  When it is clear that a state court has not reached the merits

12  of a petitioner's claim, because it was not raised in state court or because the court denied it on

13  procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must

14  review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the

15  AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim

16  under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002)

17  (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA

18  did not apply because evidence of the perjury was adduced only at the evidentiary hearing in

19  federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where

20  state court had issued a ruling on the merits of a related claim, but not the claim alleged by

21  petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and

22  federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

23  Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

24  not available for any claim decided on the merits in state court proceedings unless the state court's

25  adjudication of the claim:

26  (1) resulted in a decision that was contrary to, or involved an unreasonable
   application of, clearly established Federal law, as determined by the

27  Supreme Court of the United States; or

28  / / /

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at

6

1    406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine

2    first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6

3    (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal

4    habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the

5    error had a substantial and injurious effect on the verdict, or was harmless.  See id.

6                State court decisions are reviewed under the far more deferential "unreasonable

7    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

8    unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

9    510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

10   that federal habeas relief may be available under this standard where the state court either

11   unreasonably extends a legal principle to a new context where it should not apply, or

12   unreasonably refuses to extend that principle to a new context where it should apply.  See

13   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

14   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

15   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

16   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even

17   where the federal habeas court concludes that the state court decision is clearly erroneous.  See

18   Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

19   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

20   As with state court decisions which are "contrary to" established federal law, where a state court

21   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

22   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

23               The "unreasonable application of" standard also applies where the state court

24   denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

25   848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

26   are considered adjudications on the merits and are, therefore, entitled to deference under the

27   AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

28   The federal habeas court assumes that state court applied the correct law and analyzes whether the

7

1  state court's summary denial was based on an objectively unreasonable application of that law.

2  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

3

4                                    **III.  DISCUSSION**

5          In his federal petition, Petitioner refers to his opening brief on direct appeal in

6  which he raised the following claims: (1) the trial court denied Petitioner's due process rights in

7  failing to sever the 2013 stabbing case from the 2014 shooting case; (2) the evidence was

8  insufficient to establish Petitioner committed an assault with a semiautomatic firearm; and (3) the

9  trial court erred in failing to instruct the jury that reckless or negligent conduct alone cannot

10  constitute an assault with a semiautomatic firearm.  See ECF No. 1, pg. 9.

11         **A.      Bifurcation**

12         In his first claim, Petitioner contends the trial court committed reversable error

13  when it declined to sever.  See id. at 9.  Citing California law, Petitioner contends Penal Code

14  § 954 allows for consolidation of different offenses of the same class of crimes but permits the

15  trial court to order that different offenses be tried separately.  See id. at 26.  The party seeking

16  severance must show substantial danger of prejudice from joinder.  See id. at 27 (citing People v.

17  Vines, 51 Cal. 4th 830, 855 (2011).  The trial court's decision not to sever cannot be reversed

18  unless joinder resulted in gross unfairness amounting to a denial of due process.  See id. (citing

19  People v. Mendoza, 24 Cal. 4th 130, 162 (2006).  According to Petitioner:

20              . . .[T]he trial court's failure to sever violated his [Petitioner's]
                constitution right to due process and a fair trial, because it permitted the
21              jury to convict him not on the basis of the evidence, but because of his
                alleged criminal disposition to lay in wait before attacking those who had
22              supposedly offended him.

23         ECF No. 1, pg. 30.

24         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

25  transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

26  1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available

27  for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see

28  also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378,

1   1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v.

2   Wainwright, 407 U.S. 371, 377 (1972).

3            However, a "claim of error based upon a right not specifically guaranteed by the

4   Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

5   infects the entire trial that the resulting conviction violates the defendant's right to due process."

6   Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

7   Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a

8   claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

9   miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

10  F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

11           In rejecting this claim on direct appeal, the California Court of Appeal stated:

12           Defendant contends the trial court prejudicially erred in denying his
             motion to bifurcate the charges in the 2013 stabbing case from the 2014
13           shooting case because they did not contain cross-admissible evidence and
             the consolidation unfairly strengthened "two relatively weak cases."
14
15           . . .Here, assault with a deadly weapon and assault with a semiautomatic
             firearm are both assaultive crimes, and share common characteristics.
16           "'Because the charges were properly joined under section 954, "defendant
             must make a clear showing of prejudice to establish that the trial court
17           abused its discretion in denying defendant's severance motion."'
             [Citation.] That is, defendant must demonstrate the denial of his [or her]
18           motion exceeded the bounds of reason. [Citation.]" (Capistrano, supra, 59
             Cal.4th at p. 848.)
19                                      * * *
20           The trial court did not abuse its discretion in denying defendant's motion
             to bifurcate. As to the issue of cross admissibility, "[w]hen, as here, crimes
21           of the same class are charged together, 'evidence concerning one offense
             or offenses need not be admissible as to the other offense or offenses
22           before the jointly charged offenses may be tried together . . . .' (§ 954.1.)"
             (People v. Cook (2006) 39 Cal.4th 566, 581, 47 Cal. Rptr. 3d 22, 139 P.3d
23           492.) Even if we assume the evidence was not cross-admissible, absence
             of cross-admissibility is, standing alone, insufficient to establish an abuse
24           of discretion in failing to sever the charges; rather, it is one factor to be
             weighed against the benefits of joinder. (People v. Soper (2009) 45 Cal.4th
25           759, 779-780, 89 Cal. Rptr. 3d 188, 200 P.3d 816 (Soper).)
26           Neither offense here was a capital offense, and the prosecution did not
             seek joinder to convert the case into a capital case. (Soper, supra, 45
27           Cal.4th at p. 780.) Nor was either offense unusually likely to inflame the
             jury against the defendant; each involved an assault committed with a
28           deadly weapon following an altercation. They were similar in nature and

                                              9

degree of egregiousness. (*Ibid*.) Lastly, there was no risk of a "spillover effect" from, as defendant claims, joining two weak cases together. The evidence in each of these cases was of similar strength, and each was sufficiently strong on its own to sustain a conviction. Although much of the evidence was circumstantial, in each case defendant was identified by eyewitnesses and on videotape. In each case, defendant was linked to the clothing worn by the perpetrator. Also in each case, defendant was involved in an altercation, left the scene, and returned to commit an assault. "In any event, as between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges. [Citation.] Furthermore, the benefits of joinder are not outweighed—and severance is not required—merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried. [Citations.]" (*Id*. at p. 781.) We conclude the trial court did not abuse its discretion in denying defendant's motion to bifurcate the charges.

ECF No. 19-10, pgs. 3-4.

In his answer, Respondent argues the claim is not cognizable to the extent it is a challenge to the state court's application of state law.  See ECF No. 17, pg. 20.  Respondent also argues that, in any event, Petitioner has not shown a violation of due process.  See id.  According to Respondent:

> To the extent Petitioner's claim involves the trial court's misapplication of California's laws regarding severance, the claim is not cognizable on federal habeas review, because it involves only an alleged error in state law. "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle*, 502 U.S. at 71-72. Habeas relief is not available for an alleged error in the application of state law. *Id*. at 68.
> To the extent that Petitioner raises a federal due process challenge to the trial court's refusal to sever these claims, it fails because the United States Supreme Court "has not held that a state or federal trial court's denial of a motion to sever can" violate constitutional rights. *Grajeda v. Scribner*, 541 F. App'x 776, 778 (9th Cir. 2013). Indeed, the Supreme Court has held that "[i]mproper joinder does not, in itself, violate the Constitution." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). The Supreme Court has indicated that "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial," but only in dicta. *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). Consequently, *Lane* does not set forth a governing legal principle, and does not constitute clearly established federal law, with regard to when severance is constitutionally mandated. *Id*.; *see also Carey v. Musladin*, 549 U.S. at 74 (restricting "clearly established federal law" under § 2254 to holdings of the Supreme Court, rather than dicta). For these reasons, the Court of

/ / /

10

Appeal's rejection of Petitioner's severance claim could not have been an unreasonable application of clearly established federal law.

ECF No. 17, pg. 20.

Respondent's arguments are persuasive. The Court agrees that, to the extent Petitioner is challenging the state court's application of California law on bifurcation and joinder, Petitioner cannot state a claim for federal habeas corpus relief. The Court also agrees that Petitioner cannot prevail because the Supreme Court has held that improper joinder does not, in itself, violate the Constitution. See Lane, 474 U.S. at 446 n.8. While the Supreme Court indicated in dicta that misjoinder could implicate the Constitution if it results in prejudice so great as to deny the defendant of a fair trial, see Collins, 603 F.3d at 1132, dicta does not constitute clearly established law, see Musladin, 549 U.S. at 74.

### B. Sufficiency of the Evidence

In his second claim, Petitioner contends the evidence was insufficient to establish beyond a reasonable doubt that Petitioner committed an assault with a semiautomatic firearm. See ECF No. 1, pg. 30.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[2] Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether

---

[2]     Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993). The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

In rejecting this claim on direct appeal, the California Court of Appeal stated:

Defendant contends there was insufficient evidence he committed an assault with a semiautomatic firearm. Specifically, defendant claims there was insufficient evidence to find he should have known his act "would directly and probably result in the application of force to someone."

To establish assault with a semiautomatic firearm, the prosecution was required to prove:

1. The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person;

2. The defendant did that act willfully;

3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and

4. When the defendant acted, he had the present ability to apply force with a semiautomatic firearm to a person. (§ 245, subd. (b); CALCRIM No. 875.)

* * *

In an attempt to show there was insufficient evidence, defendant delineates a variety of pieces of evidence the prosecution did not put forward, such as there was no evidence showing the manner in which defendant discharged the gun, showing the gun was aimed at anyone in particular, and showing the bullet traveled in a straight line. Defendant's focus is misplaced. The fact certain evidence was not presented does not mean there was not sufficient evidence to sustain the conviction.

Here, the evidence established defendant had a fight with a group of other men. As he fled, he said, "I will be back, motherfuckers." When defendant reappeared, he was brandishing a semiautomatic handgun. No one else in the area was seen with a weapon. Defendant was facing toward the Arabian Nights Hookah Lounge.

A large group was standing in front of the lounge. The men defendant had been fighting with were also outside, between the hookah lounge and defendant, and they were coming toward him. There was a single gunshot and immediately Sean felt pain in his leg, the result of a gunshot wound. A single spent shell casing from a nine-millimeter semiautomatic handgun was found near the location where defendant was seen brandishing the gun. It was reasonable for the jury to infer, as Chesney did, defendant's

statement as he was leaving the scene was a threat to return and do further violence against the men he was fighting. It was reasonable for the jury to infer defendant, the only person seen with a gun, was the person who fired the single shot that resulted in Sean's injury. It was also reasonable for the jury to infer defendant was shooting at the men he had been fighting with that put the large group in front of the Arabian Nights Hookah Lounge also in the line of fire, and the act of shooting in the direction of that many people on the street "would lead a reasonable person to realize that his [or her] act by its nature would directly and probably result in the application of force to someone." Accordingly, we conclude there is sufficient evidence to sustain defendant's conviction for assault with a semiautomatic firearm.

ECF No. 19-10, pgs. 4-5.

In his answer, Respondent argues the state court's determination is neither contrary to law nor based on an unreasonable application of the law.  See ECF No. 17, pg. 22. Specifically, Respondent contends:

. . .[I]t is evident that the state court's rejection of his claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The state court concluded that there was ample evidence of motive and identity from which it could be reasonably inferred that Petitioner did precisely what he had threatened to do when he fled the fight outside of the bar, yelling: "I will be back, motherfuckers." (Exh. A at 5.) When the men Petitioner had been fighting with saw him again, he was brandishing a semiautomatic handgun. No one saw anyone else, other than Petitioner, in the area with a weapon. As the state court concluded, "[i]t was also reasonable for the jury to infer defendant was shooting" in the direction of the men with whom he had been fighting earlier, and that "the act of shooting in the direction of [a crowd] on the street 'would lead a reasonable person to realize that his [or her] act by its nature would directly and probably result in the application of force to someone.'" (Exh. A at 5.) In other words, because the men Petitioner had aimed at were standing outside a bar amongst a group of people, Petitioner knew, or reasonably should have known, that his act of shooting a semiautomatic firearm in their direction would endanger everyone standing in their vicinity. (Exh. A at 5.)

Petitioner's claim is based entirely on the opening brief that his counsel filed in the state court of appeal. The opening brief merely points out evidence that the prosecution could have, but did not, bring forth at trial. (Pet. at 32-33.) Petitioner does not argue that the rejection of the state-court claim triggered an exception to 28 U.S.C. § 2254(d)'s re-litigation bar. Rather, his pleading implies a disagreement with the California Court of Appeal's conclusion. As the Court of Appeal observed, Petitioner's "focus is misplaced. The fact certain evidence was not presented does not mean there was not sufficient evidence to sustain the conviction." (Exh. A at 5.) Ultimately, Petitioner's claim fails because he does not, and cannot, cite to any Supreme Court authority holding that the absence of some evidence, without more, can establish as a matter of

13

1   law that the evidence presented was legally insufficient to support a
conviction.

2       Thus, Petitioner is not entitled to relief from his conviction for
assault with a semiautomatic firearm.

3   ECF No. 17, pg. 24.

4

5       Petitioner's claim that the evidence is insufficient is premised on evidence which

6   was not adduced at trial, such as evidence showing the manner in which the gun was discharged,

7   evidence showing the gun was aimed at anyone in particular, and evidence showing the bullet

8   traveled in a straight line.  As the state court observed, however, just because certain evidence

9   was not presented does not necessarily mean the evidence that was presented is insufficient.  The

10  issue remains whether, based on the evidence adduced at trial viewed in the light most favorable

11  to the prosecution, a rational jury could convict.

12      Petitioner was charged with assault with a semiautomatic firearm under California

13  Penal Code § 245(b).  Section 245(b) states: "Any person who commits an assault upon the

14  person of another with a semiautomatic firearm shall be punished by imprisonment in the state

15  prison for three, six, or nine years."  The trial court instructed the jury pursuant to CALCRIM No.

16  875 – an instruction Petitioner does not challenge – that guilt required proof beyond a reasonable

17  doubt of the following elements: (1) the defendant did an act with a deadly weapon that by its

18  nature would directly and probably result in the application of force to a person; (2) the defendant

19  did that act willfully; (3) when the defendant acted, he was aware of facts that would lead a

20  reasonable person to realize that his act by its nature would directly and probably result in the

21  application of force to someone; and (4) when the defendant acted, he had the present ability to

22  apply force with a semiautomatic firearm to a person.

23      Based on the facts recited by the state court, it was adduced at trial that Sims, the

24  Lowes, and Acosta heard a gunshot coming from the direction of the nearby Tres Hombres

25  restaurant and that, while no one saw the shooter, Sean Lowe immediately felt pain in his leg and

26  realized he had been shot.  It was also adduced at trial that, at about the same time, Chesney

27  witnessed a scuffle break out down the street in the direction of the Tres Hombres restaurant.

28  Petitioner was involved in the scuffle.  During the fight, someone grabbed Petitioner's jacket and

14

1   Petitioner began to run down the street towards Chesney as his jacket was torn off and thrown to

2   the ground.  As Petitioner passed Chesney and turned the corner down an alleyway, Petitioner

3   was heard to say, "I'll be back motherfuckers."  A short time later, Petitioner reappeared from the

4   alleyway brandishing a semiautomatic pistol.  As Chesney ducked into a doorway, he saw the

5   group with whom Petitioner had been fighting begin to walk toward Petitioner and then Chesney

6   heard a gunshot.  After hearing the gunshot, Chesney saw someone whom he understood had

7   been shot sitting on the ground.  Petitioner was the only person Chesney saw who had a gun.

8           It was further adduced at trial that the responding officer – Peter Durfee – found an

9   expended nine-millimeter shell casing near an alley just south of the Tres Hombres restaurant,

10   and a black leacher jacket nearby.  A criminalist determined a bullet found at the scene had been

11   fired by an automatic or semiautomatic firearm and not a revolver.  Detective Love, who

12   investigated the shooting, learned from witnesses that the suspect's description matched

13   Petitioner.  Further, Love located photos on Petitioner's social media accounts of Petitioner

14   wearing a similar leather jacket, down to a red wire used to hold the cuff together.  Finally, Love

15   located and examined video surveillance footage from a hookah lounge near the crime scene

16   which showed Petitioner run down the street, bump into someone, and pull something from his

17   jacket.  Petitioner was seen in the video wearing a red shirt, and Chesney later identified the

18   person wearing the red shirt on the video as the same person he had seen brandishing the gun.

19           This Court agrees with the state court that, when viewed in the light most

20   favorable to the prosecution, this evidence is sufficient to allow a rational jury to convict.  A

21   reasonable jury could conclude from the facts adduced at trial that Petitioner fired into the group

22   with whom he had been fighting.  This satisfied the first element – that Petitioner did an act with

23   a deadly weapon that by its nature would directly and probably result in the application of force to

24   a person.  A reasonable jury could also conclude that the act was willful, satisfying the second

25   element – that Petitioner acted willfully.  A jury could further conclude Petitioner was actually

26   aware of facts indicating that a reasonable person would have realized at the time Petitioner fired

27   that the act would directly and probably result in the application of force to someone, satisfying

28   the third element.  Finally, a reasonable jury could conclude that Petitioner used a semiautomatic

15

1  firearm, satisfying the fourth element.

2          Given the facts recited by the state court, this Court cannot say that the state

3  court's determination is either contrary to or based on an unreasonable application of clearly

4  established federal law.

5        **C.**     **<u>Jury Instruction</u>**

6          In his third claim, Petitioner asserts the trial court committed reversable error by

7  denying his trial counsel's request for a "pinpoint" instruction and not instructing the jury that it

8  may not convict Petitioner of assault based upon reckless conduct alone even if such conduct

9  results in injury.  <u>See</u> ECF No 1., pg. 34.

10          In general, to warrant federal habeas relief, a challenged jury instruction "cannot

11  be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

12  process right guaranteed by the fourteenth amendment." <u>Prantil v. California</u>, 843 F.2d 314, 317

13  (9th Cir. 1988) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

14  must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

15  conviction violates due process.'" <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quoting <u>Cupp</u>,

16  414 U.S. at 147.  In making its determination, this court must evaluate an allegedly ambiguous

17  jury instruction "'in the context of the overall charge to the jury as a component of the entire trial

18  process.'" <u>Prantil</u>, 843 F.2d at 817 (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir.

19  1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire

20  'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a

21  way' that violates the Constitution." <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Boyde v. California</u>, 494

22  U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an

23  instruction. <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977).  Where an instruction is missing a

24  necessary element completely, the "reasonable likelihood" standard does not apply and the court

25  may not ". . . assume that the jurors inferred the missing element from their general experience or

26  from other instructions. . . ." <u>See</u> <u>Wade v. Calderon</u>, 29 F.3d 1312, 1321 (9th Cir. 1994).  In the

27  case of an instruction which omits a necessary element, constitutional error has occurred.  <u>See</u> <u>id.</u>

28  / / /

16

1         It is well-established that the burden is on the prosecution to prove each and every

2   element of the crime charged beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 364

3   (1970).  Therefore, due process is violated by jury instructions which use mandatory

4   presumptions to relieve the prosecution's burden of proof on any element of the crime charged.

5   See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510

6   (1979).  A mandatory presumption is one that instructs the jury that it must infer the presumed

7   fact if certain predicate facts are proved.  See Francis, 471 U.S. at 314.  On the other hand, a

8   permissive presumption allows, but does not require, the trier of fact to infer an elemental fact

9   from proof of a basic fact.  See County Court of Ulster County v. Allen, 442 U.S. 140, 157

10  (1979).  The ultimate test of the constitutionality of any presumption remains constant – the

11  instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced

12  by the government, to find the ultimate facts beyond a reasonable doubt.  See id. at 156 (citing In

13  re Winship, 397 U.S. at 364).

14        The California Court of Appeal rejected this claim on direct appeal.  The court

15  stated:

16       Defendant contends the trial court erred in failing to give a requested
17  "pinpoint" instruction that "reckless conduct alone cannot constitute an
    assault with a semiautomatic firearm." He contends in refusing this
    instruction, the trial court did not follow controlling Supreme Court
18  precedent that "mere recklessness or criminal negligence cannot suffice to
    prove an assault."
19

20       . . .Defendant requested a pinpoint instruction that read, "You may not
    convict the defendant of assault based on reckless conduct alone, even if
21  that conduct results in injury." Defense counsel argued there was an
    inference that if defendant had shot into a crowd, without an intent to hit
22  anyone, it was probably only gross negligence or recklessness, not assault.
    He also argued there was a danger CALCRIM No. 875 would mislead the
23  jury into thinking assault had been proven, simply by a shot being fired
    and some likelihood based on the number of people that someone would
24  be hit. The prosecution argued the law was adequately explained in
    CALCRIM No. 875. The trial court found the portion of the instruction
25  that informed the jury, "[w]hen the defendant acted, he was aware of facts
    that would lead a reasonable person to realize that his act by its nature
26  would directly and probably result in the application of force to someone,"
    "covers the concerns expressed," and denied the requested pinpoint
    instruction.
27                             * * *

28

> Here, CALCRIM No. 875 advised the jury that when defendant acted he had to be "aware of facts that would lead a reasonable person to realize his act by its nature would directly and probably result in the application of force." The instruction was entirely consistent with the language of *People v. Williams*, that defendant had to have actual knowledge of the facts and could not be convicted based on facts he should have known but did not. The instructions given adequately informed the jury that recklessness or criminal negligence was insufficient to convict defendant of assault with a semiautomatic firearm. Accordingly, the "requested pinpoint instruction was therefore redundant, unnecessary and properly rejected." (*People v. Canizalez, supra*, 197 Cal.App.4th at p. 857.)

ECF No. 19-10, pgs. 5-6.

In his answer, Respondent argues the state court's determination is neither contrary to nor based on an unreasonable application of clearly established federal law. See ECF No. 17, pgs. 26. According to Respondent:

> On direct appeal, Petitioner argued that the standard jury instructions were not sufficient to communicate to the jurors that assault cannot be based on "reckless" or criminally negligent conduct because a defendant cannot be convicted based on "facts he did not know but should have known." (Pet. at 36 [citing LD 6 at 25].) Petitioner again bases his federal habeas claim on the arguments that his appellate counsel set forth in the opening brief filed on direct appeal. His claim fails because the state court of appeal rejected those arguments in a reasoned decision that was neither contrary to, or an unreasonable application of, clearly established federal law.
>
> * * *
>
> Here, the California Court of Appeal found that defense trial counsel's requested pinpoint instruction was unnecessary because the jury was properly instructed with the standard CALCRIM instructions provided; and further, that the proposed instruction was duplicative of the other instructions. Specifically, it held that the trial court adequately instructed on the relevant principles related to assault with CALCRIM No. 875, which "advised the jury that when defendant acted he had to be 'aware of facts that would lead a reasonable person to realize his act by its nature would directly and probably result in the application of force.'" (Exh. A at 6.) The state Court's determination that the jury was properly instructed under state law is binding. *See Bradshaw v. Richey*, 456 U.S. 74, 76 (2005). The Constitution does not guarantee a defendant the right to jury instructions phrased in the precise terms he prefers. *See Duckett v. Godinez*, 67 F.3d 734, 743-746 (9th Cir. 1995) (due process does not require the trial court to instruct on the defendant's precise theory of the case where other instructions adequately cover the defense theory), cert. denied, 517 U.S. 1158, 116 S.Ct. 1549, 134 L. Ed. 2d 651 (1996). Even if this Court were inclined to disagree with the state court's interpretation of its own law, it could not grant petitioner the relief he seeks because there is no Supreme Court case with indistinguishable

///

circumstances, in which the Supreme Court "found" a violation of the Constitution. *Metrish*, 569 U.S. at 367-68.

ECF No. 17, pgs. 26-27.

The premise of Petitioner's argument is that the pinpoint instruction requested was required because the jury had not been adequately informed that recklessness or negligence alone was insufficient to convict. As the state court noted, the jury was instructed under CALCRIM No. 875 that, to convict, it must find Petitioner acted with actual knowledge that his act by its nature would directly and probably result in the application of force to someone. This Court agrees with both the trial court and the Court of Appeal that CALCRIM No. 875 addressed Petitioner's concern in that recklessness or negligence are insufficient to convict because actual knowledge of certain facts, i.e., willfulness, is required. The requested instruction was, therefore, redundant. As such, the failure to give the requested instruction could not have rendered the trial fundamentally unfair.

The Court finds that the state court's determination is neither contrary to nor based on an unreasonable application of controlling law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

19

1                                   **IV.  CONCLUSION**

2                 Based on the foregoing, the undersigned recommends that Petitioner's petition for

3 a writ of habeas corpus, ECF No. 1, be denied.

4                 These findings and recommendations are submitted to the United States District

5 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

6 after being served with these findings and recommendations, any party may file written objections

7 with the court.  Responses to objections shall be filed within 14 days after service of objections.

8 Failure to file objections within the specified time may waive the right to appeal.  <u>See</u> <u>Martinez v.</u>

9 <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10

11 Dated:  February 19, 2021

12                                                       DENNIS M. COTA

13                                                       UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28